UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UPP GLOBAL, LLC

    Plaintiff,

v.                                          Case No.:

CITY OF TREASURE ISLAND,
FLORIDA,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUCTIVE RELIEF

Plaintiff, UPP GLOBAL, LLC ("Plaintiff"), sues Defendant, CITY OF TREASURE ISLAND, FLORIDA, and alleges as follows:

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violation of its rights under the Fourth and Fourteenth Amendments of the United States Constitution and for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Defendant, CITY OF TREASURE ISLAND, FLORIDA ("City"), is a municipality organized under the laws of Florida and located in Pinellas County.

4. Plaintiff operates several paid public parking venues throughout the jurisdictional border of the City.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the City is a municipality located within the District.

## BACKGROUND FACTS

6. Plaintiff operates numerous paid public parking venues throughout the City. In some instances, the parking venues are stand-alone parking facilities, while in other instances, Plaintiff collaborates with existing businesses to use portions of their off-street parking spaces for paid public parking purposes.

7. In connection with its operations, Plaintiff utilizes various forms of signage to communicate commercial and non-commercial messages, including but not limited to, messages providing directional information relating to means of ingress and egress, signs warning that vehicles parked without permission are subject to being towed, as well as signs providing information regarding paid parking availability. Additionally, each parking venue includes one or more payment kiosks/parking ticket vending machines, that include messages regarding parking rates and payment options.

8. Plaintiff has operated within the City since approximately 2017 and has consistently operated in the same manner using the same forms of signage since it began operations and Plaintiff historically enjoyed a good working relationship with the City and City officials.

**The City's Sign Code**

9. In 2021, the City adopted Ordinance 2021-02, repealing and replacing its sign code as set forth in Article II, Chapter 73 of the City code (the "City's Sign Code"). A copy of Ordinance 2021-02 is attached as Exhibit "A."

10. Section 73-35(a)(1) of the City's Sign Code provides:

> No person shall paint, erect, demolish, alter, rebuild, enlarge, extend, relocate, demolish, repair, do any work upon, attach to, or suspend from a building or structure, any sign unless a permit for such sign has been issued by the building official or unless such sign is specifically exempted from permit requirements.

11. Section 73-35(b)(2) of the City's Sign Code goes on to identify the required information to be included in any sign permit application. Absent from Section 73-35 or anywhere else in the City's Sign Code, are clear and definite standards for the granting or denying of sign permit applications.

12. Also absent from the City's Sign Code is a clear deadline by which the City is required to render a decision with respect to any permit application.

13. Section 73-35 of the City's Sign Code authorizes variances from the applicable regulations under the City's Sign Code; however, there are no definite objective criteria under which such variances are to be granted, and there is no deadline by which the variance must be granted. In the

3

absence of a decision on a permit application, a sign may not be erected within the City unless it falls within a specified exemption from the permitting requirement.

14. Section 73-36 provides a list of signs exempt from the City's sign permitting scheme. Most of the exemptions are content based, such as exemptions for government signs, artwork, driveway directional signs, and "signs customarily affixed" to newspaper racks and vending machines.

15. Section 73-41 lists signs that are expressly prohibited except and otherwise provided in the Code. Section 73-41(23) operates as a catch-all that prohibits any sign not specifically described or enumerated in the code.

16. While many of Plaintiff's existing signs have been previously permitted by the City; anytime Plaintiff seeks to erect a new sign for which a permit is required or seeks to alter or move one of its existing permitted signs, it is required to apply for and obtain a permit.

17. Additionally, some of the signs at Plaintiff's venues fall within the categories of signs exempted under the permit requirements. Among such signs are freestanding signs as defined under 73-32, which Plaintiff utilizes as driveway directional signs set within a movable metal stand that is not permanently anchored to the ground or any other structure, allowing

it to be easily relocated if needed (the "Windmaster Signs"). Freestanding signs are not listed as a prohibited sign type under the City's Sign Code and are specifically permitted in all zoning districts.

18.     On or about March 13, 2023, Plaintiff lodged several complaints with the City's code compliance inspector concerning a competitor that had set up a parking lot within the City without complying with applicable permit requirements.

19.     Soon after, Plaintiff's signs began receiving increased scrutiny from City code enforcement. Plaintiff began receiving notices that Plaintiff's Windmaster Signs were deemed to be prohibited "portable signs" under the Code, despite the same signs having been used by Plaintiff for years without issue; and even though similar signs continue to be used by others throughout the City.

20.     Additionally, Plaintiff's sign permit applications, became bogged down by unending bureaucracy and constantly shifting requirements. For example, Plaintiff's application to move certain signs at its parking venue located at 9701 1st Street has been pending for several months and required numerous resubmittals to satisfy vague and subjective criteria, with no apparent end to the process.

21. The City's sign code unduly burdens Plaintiff's protected speech because it regulates signs within the City based upon content and favors some forms of speech and certain speakers over others. Additionally, the City's sign permitting scheme lacks clear and definite objective criteria and grants city officials unbridled discretion over Plaintiff's ability to erect, move or alter signs.

22. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

## COUNT I
## FACIAL FIRST AMENDMENT CHALLENGE TO CITY'S SIGN CODE
### (City's Permitting Mechanism)

23. Plaintiff re-alleges paragraphs 1 to 22 as set forth above.

22. The City's Sign Code permitting scheme operates as an unconstitutional prior restraint on speech.

23. A prior restraint on speech exists "when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir.2000). A sign permitting scheme is a prior restraint. *Cafe Erotica of Florida, Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1282 (11th Cir. 2004). While, prior restraints are not per se unconstitutional, "any system of prior restraint bears a heavy presumption against its constitutional validity." *Id*.

24. Government discretion in speech permitting is allowed, if at all, only where constrained by precise and objective standards. A law that subjects the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional. Prior restraints must avoid unbridled discretion at the hands of government officials and ensure that permitting decisions are made within a specified time period. *Id.*

25. The City's Sign Code lacks clear and definite objective criteria for the granting or denying of a sign permit, and thus vests unbridled discretion in the hands of City officials.

26. Additionally, the City's Sign Code does not set forth any timeframe within which the building official is required to render a decision on a sign permit application and absent from the sign code is any procedural mechanism for the prompt review for the denial of a sign permit application.

27. Further, while the City's Sign Code provides for variances from certain code provisions, it lacks clear and definite objective criteria for the granting or denying of variance requests and there is no definite timeframe for the approval or denial of variance requests.

28. The City's Sign Code cannot be effectively salvaged by severing the permitting requirements, as those requirements constitute a central

feature to the city's regulatory scheme. Severance would require the Court to essentially rewrite the sign code and establish a new code never intended.

WHEREFORE Plaintiff demands judgment against Defendant for declaratory relief finding that City's Sign Code, Section 73-35 in particular, is facially unconstitutional under the First and Fourth Amendments to the U.S. Constitution, grant temporary and permanent injunctive relief prohibiting Defendant from enforcing the City's Sign Code, an award of nominal damages to vindicate Plaintiff's constitutional rights, an award of attorneys' fees and costs pursuant to 42 U.S.C. 1988, and all other relief that is just and proper.

## COUNT II
## FACIAL FIRST AMENDMENT CHALLENGE TO CITY'S SIGN CODE
## (Regulation of Speech Based on Content)

29. Plaintiff re-alleges paragraphs 1 to 22 as set forth above.

30. The City's Sign Code impermissibly regulates speech based on content.

31. Government regulation of speech is content based if it applies based on the topic discussed or the idea or message expressed. This commonsense rule requires a reviewing court to determine whether a regulation draws distinctions based on the message a speaker proposes to convey.

32. The Sign Code repeatedly classifies and regulates signs based on their content. It cannot survive strict scrutiny because the City has no compelling reason to disfavor certain content.

33. For example, the City's Sign Code requires a permit before any sign may be erected, altered or moved, but section 73-36, then provides for a series of content based exemptions from the permitting scheme such as, for things such as artwork, directional signs, government signs, manufacturers or distributors signs, and signs "customarily" affixed to vending machines, newspaper racks, telephone booths, gasoline pumps, taxi cabs, buses, or other modes of general public transportation.

34. The City's Sign Code cannot be effectively salvaged by severing the permitting scheme and corresponding content-based exemptions, as those requirements constitute a central feature to the City's regulatory scheme. Severance would require the Court to essentially rewrite the sign code and establish a new code never intended.

WHEREFORE Plaintiff demands judgment against Defendant for declaratory relief finding that City's Sign Code, Sections 73-35 and 73-36 are facially unconstitutional under the First and Fourth Amendments to the U.S. Constitution, grant temporary and permanent injunctive relief prohibiting Defendant from enforcing the City's Sign Code, an award of nominal

damages to vindicate Plaintiff's constitutional rights, an award of attorneys' fees and costs pursuant to 42 U.S.C. 1988, and all other relief that is just and proper.

## COUNT III
## FACIAL FIRST AMENDMENT CHALLENGE TO CITY'S SIGN CODE
### (Categorical Ban on Portable Signs)

35. Plaintiff re-alleges paragraphs 1 to 22 as set forth above.

36. Section 73-32 of the City's Sign Code defines portable signs as:

> Portable signs means any sign designed or intended to be readily relocated whether or not it is permanently attached to a building, structure or on the ground. The term includes signs on wheels or on portable structures, tent signs, mobile signs, sandwich board signs, A-frame signs, sidewalk signs, umbrellas, inflatables, and similar devices.

37. Section 73-41(5) of the City's Sign Code categorically bans portable signs, without exception, and Section 73-41(23) bans any sign not specifically permitted under the Code.

38. The City's categorical ban on all portable signs as written is unconstitutionally overbroad and is not narrowly tailored to address the City's interests. Additionally, the City's categorial ban on portable signs does not leave open meaningful alternatives, especially given the applicable permitting requirements and catch-all prohibition against any sign not specifically authorized under the City's Sign Code.

WHEREFORE Plaintiff demands judgment against Defendant for declaratory relief finding that City's categorical ban on portable signs is facially unconstitutional under the First and Fourth Amendments to the U.S. Constitution, grant temporary and permanent injunctive relief prohibiting Defendant from enforcing the categorical ban on portable signs, an award of nominal damages to vindicate Plaintiff's constitutional rights, an award of attorneys' fees and costs pursuant to 42 U.S.C. 1988, and all other relief that is just and proper.

## COUNT IV
## FACIAL FIRST AMENDMENT CHALLENGE TO CITY'S SIGN CODE
## (Presumption that Signs are Banned Unless Specifically Permitted)

39.  Plaintiff re-alleges paragraphs 1 to 22 as set forth above.

40.  The City's Sign Code established an unconstitutional presumption that signs are banned unless expressly permitted under the Code.  This is the opposite of the constitutionally required paradigm. Governments must provide the basis for their speech restrictions and then restrict only such signs as necessary to further the legitimate state interests. The City has it backwards, and places the burden on the speaker to prove entitlement to speak.

41. Because this aspect of the City's Sign Code is constitutionally invalid and inseparable from the remainder of the City's Sign Code, this Court should declare the Sign Code invalid in its entirety.

WHEREFORE Plaintiff demands judgment against Defendant for declaratory relief finding that City's Sign Code, is facially unconstitutional under the First and Fourth Amendments to the U.S. Constitution, grant temporary and permanent injunctive relief prohibiting Defendant from enforcing the City's Sign Code, an award of nominal damages to vindicate Plaintiff's constitutional rights, an award of attorneys' fees and costs pursuant to 42 U.S.C. 1988, and all other relief that is just and proper.

 s/Joseph P. Kenny
Joseph P. Kenny, Esq.
Florida Bar No.: 59996
Weber, Crabb & Wein, P.A.
5453 Central Avenue
St. Petersburg, Florida 33710
(727) 828-9919
(727) 828-9924 (fax)
joseph.kenny@webercrabb.com
suzie.whitaker@webercrabb.com
Attorneys for Plaintiff